UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

_____
:
NEXTEL COMMUNICATIONS OF THE :
MID-ATLANTIC, INC., :
:
      Plaintiff, :
: Civil No. 3:14-CV-2409
      v. :
: (Judge Kosik)
ZONING HEARING BOARD OF ROSS :
TOWNSHIP, MONROE COUNTY, :
PENNSYLVANIA, :
:
      Defendant. :
_____:

### MEMORANDUM

      This case involves a challenge to Defendant's denial of Plaintiff's zoning application to construct and operate a wireless telecommunication facility on a designated leased area, on property located in the Rural Residential ("RR") Zoning District of Ross Township, Monroe County, Pennsylvania. (Doc. 1). Plaintiff claims that Defendant has violated the federal Telecommunications Act of 1996 ("TCA"), because Defendant's denial of the zoning application has the effect of prohibiting the provision of personal wireless service and Defendant's actions were arbitrary, capricious, an abuse of discretion and contrary to the requirements of 47 U.S.C. 332(c)(7)(B)(iii). (Id.). Cross-motions for summary judgment have been filed (Docs. 13, 18), which are now ripe for disposition. For the reasons that follow, we will deny Plaintiff's Motion for Summary Judgment (Doc. 13) and grant Defendant's Motion for Summary Judgment (Doc. 18).

**Background**

In this section, the Court sets forth a summary of the facts and procedural history concerning Plaintiff's zoning application. The summary is derived from the record in front of us, including the transcripts of the March 20, 2014; September 17, 2014; and October 8, 2014 hearings before Defendant, the exhibits introduced at that hearing, and Defendant's "Decision of the Zoning Hearing Board of Ross Township, Pennsylvania" ("Decision"). (Doc. 10.)

Plaintiff, a wireless telecommunications carrier licensed by the Federal Communications Commission ("FCC"), entered into a lease agreement with Scott Wetmore and Jay Balkenbusch, the owners of property zoned Rural Residential ("RR"), situated along Rolling Hill Road in Ross Township, to build a wireless communication tower. (Doc. 14, Pl.'s SMF, at ¶¶ 1, 2, 4; Doc. 21, Def.'s CSMF, at ¶¶ 1, 2, 4.) The proposed telecommunication facility would consist of a 130 ft. galvanized steel monopole antenna, three Sprint Communication antennas, three Sprint equipment cabinets to be located on a concrete equipment pad with a dimension of 10 ft. by 16 ft., coaxial cable, utility meters, fencing, adequate parking, and a 10 ft. wide stone access drive. (Id., at ¶ 1.)

Plaintiff filed an application with Defendant seeking a special exception use, pursuant to Section 402.A.(15)(b)(9) of the Ross Township Zoning Ordinance, adopted by the Ross Township Board of Supervisors on December 4, 2000, and amended July 7, 2008. (Id. at ¶ 6.) After the filing of the application, Ross Township repealed the December 4, 2000 Ordinance, and adopted a new, revised Zoning Ordinance, effective May 1, 2014. (Id. at ¶ 7.) The new, revised Ordinance eliminated the Industrial Zoning District(s) within Ross Township. (Id.) Accordingly, the parties have agreed that Plaintiff does not have to show that there is a more suitable location

in an industrial district, because the revised Zoning Ordinance eliminated industrial districts. Pursuant to the Ross Township Zoning Ordinance, a cellular tower is a special exception permitted by right in an RR district "if the applicant proves to the satisfaction of the Zoning Hearing Board that there are no suitable locations for the antenna on existing towers and/or within commercial and industrial districts." Section 402.A.(15)(b)(9) of the Ross Township Zoning Ordinance.

Public hearings on Plaintiff's application were held before Defendant on March 20, 2014, September 17, 2014, and October 8, 2014. (Id. at 8.) Plaintiff presented the testimony of four (4) witnesses, consisting of two site acquisition consultants, Randell G. Holmes and Charles Orberg, a professional land surveyor, Brian Binney, and a radio frequency expert witness, Rosario Conelli. (Id. at ¶ 9.) One member of the public, Christopher McMillan, attended the hearing in opposition to the application. (Id.)

Plaintiff submitted a radio frequency propagation map (Ex. 10), that depicted the current radio frequency coverage for Nextel in Ross Township and the surrounding areas, as well as the proposed radio frequency coverage that would be provided by the proposed Facility. (Doc. 14, Pl.'s SMF, at ¶ 10(C)(iv).) Defendant set forth in the Decision, that the propagation map of the current coverage was found to be unreliable, since it was contradicted by Plaintiff's Drive Test Report (Ex. 12). (Doc. 21, Def.'s CSMF, at ¶¶ 10(C)(iv-v).) Mr. Conelli, the radio frequency expert witness, performed a drive test analysis for the area to be served by the proposed Facility. (Doc. 14, Pl.'s SMF, at ¶ 10(C)(xv); Doc. 21, Def's CSMF, at ¶ 10(C)(xv).) The area is said to contain 4,600 residents, based on a 2000 census. (Id. at ¶ 10(C)(xii).) Conelli testified that there is a "significant gap in coverage" in that area. (Doc. 19, Def.'s SMF, at ¶ 14.) The Drive Test

Report indicated that 92% of the call origination attempts were successful, as there were a total of 281 call origination attempts, with 258 of those attempts being successful.  (Id. at ¶¶ 22-23.)  Of the 258 successful attempts, 62 calls were dropped; therefore, 76% of the calls were not dropped.  (Id.)  Conelli testified that the wireless industry strives for a quality of service metric of 98%.  (Doc. 14, Pl.'s SMF, at ¶ 10(C)(xii).)  Conelli also testified that the proposed tower would rectify 51 of the 62 dropped calls and 15 of the 23 failed calls.  (Doc. 19, Def.'s SMF, at ¶ 24.)

Plaintiff did not contact other carriers or the FCC to determine whether another company had a tower near the subject area and whether an antenna could be located on their tower.  (Id. at ¶¶ 29, 34.)  Acquisition specialist, Charles Orberg's, investigation of other towers in the area consisted of driving in the area to visually locate other towers as well as checking a service known as antennaesearch.com, to determine whether there were other towers within a one mile radius of the proposed site.  (Id. at ¶ 33.)  Orberg testified that according to his review, there was one Sprint cellular tower located within Ross Township (NYO6HO547).  (Id. at ¶ 31.)

At the hearing, Defendant submitted a radio frequency propagation study of suggested "alternative" sites in the Commercial Zoning Districts of Ross Township.  (Doc. 14, Pl.'s SMF, at ¶ 10(C)(xix); Ex. 13.)  Conelli testified that the alternative sites would not fill the "significant gap" fully like the proposed site would, due primarily to topographical constraints; therefore, they were not pursued.  (Id. at ¶ 10(C)(xx); Doc. 19, Def.'s SMF, at ¶ 35.)  The Board did not agree and found that a tower located in a commercial zone as depicted in Exhibit 13, sheet 10, would provide significant coverage in the alleged "significant gap" area.  (Doc. 21, Def.'s CSMF, at ¶ 10(C)(xx).)

After the hearing was over, Defendant denied Plaintiff's application for a special

exception. (Id. at ¶ 12; Doc. 21, Def.'s CSMF, at ¶ 12.) The Board issued a written opinion dated November 21, 2014. (Doc. 19, Def.'s SMF, at ¶ 7.) The Board decided that Plaintiff did not qualify for a special exception under section 402.A.(15)(b)(6) of the Ross Township Zoning Ordinance, because Plaintiff "did not adequately investigate locating their facilities on existing towers or explore 'reasonable opportunities' to increase the length of or height of antennas on existing towers." (Doc. 10, Ex. 1, Decision at 5.) The Board also found that Plaintiff did not qualify for a special exception under section 402.A.(15)(b)(9), because the evidence showed that Plaintiff "did not adequately demonstrate that the cellular phone coverage Applicant sought to obtain could not be realized by locating a wireless communication tower in the commercial areas of the Township where such uses [were] permitted." (Id.) Additionally, the Board found that the evidence disputed that a "significant gap" in coverage existed. (Id.)

Plaintiff filed the Complaint on December 18, 2014, asking this Court to reverse the Defendant's decision and to direct Defendant to issue the special exception approval to Plaintiff for the facility, and to award "such other relief as the Court deems reasonable and necessary." (Doc. 1). Count I of the Complaint alleges a violation of the TCA because Defendant's decision has the effect of prohibiting the provision of personal wireless service, contrary to the requirements of 47 U.S.C. § 332(c)(7)(B)(i)(II). (Id.). Count II of the Complaint alleges another violation of the TCA, because Defendant's actions were arbitrary, capricious, an abuse of discretion and contrary to the requirements of 47 U.S.C. § 332(c)(7)(B)(iii), in that it was not supported by substantial evidence. (Id.).

Plaintiff moved for summary judgment on May 18, 2015 (Doc. 13), and filed a Statement of Facts (Doc. 14) and a Brief in Support (Doc. 15). Defendant filed a cross motion for summary

judgment on May 19, 2015 (Doc. 18), a Brief in Support (Doc. 16), and a Statement of Facts (Doc. 19). Defendant replied to Plaintiff's motion by filing an Answer to Statement of Facts (Doc. 21) and a brief in opposition (Doc. 20). Plaintiff replied to Defendant's cross motion by filing a reply brief (Doc. 22).

## Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A disputed fact is material when it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249. The court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

Initially, the moving party must show the absence of a genuine issue concerning any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden, the non-moving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257; see Celotex Corp., 477 U.S. at 323-24. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." Hugh, 418 F.3d at 267 (citing Anderson, 477 U.S. at 251). Neither unsworn statements of counsel in memoranda submitted to the court nor unsupported conclusory

allegations in the pleadings will dispute a material fact. See Fed. R. Civ. P. 56(e); Schoch v. First Fid. Bancorp., 912 F.2d 654, 657 (3d Cir. 1990).

If the court determines that the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, then no genuine issue for trial exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322.

## Discussion

**The Telecommunications Act of 1996 - 47 U.S.C. §332(c)**

"The TCA expressly preserves the authority of state and local governments to regulate land use and zoning, but places several substantive and procedural limits upon that authority when exercised in relation to personal wireless service facilities." Sprint Spectrum, L.P. v. Zoning Bd. of Adjustment of the Borough of Paramus New Jersey, 606 F. App'x 669, 671 (3d Cir. 2015) (citing APT Pittsburgh Ltd. v. Penn Twp. Butler Cnty. of Pennsylvania, 196 F.3d 469, 473 (3d Cir. 1999)). The procedural limits require that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). The substantive limits include:

> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –
>
> > (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

> (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

Id. at 332(c)(7)(B)(I).

"A state or local government has effectively prohibited the provision of wireless services where a carrier has demonstrated that (1) its facility will fill a significant gap in service, and (2) the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." Sprint Spectrum, L.P., 606 F. App'x at 671 (citing APT Pittsburgh Ltd., 196 F.3d at 480).

The parties have filed cross-motions for summary judgment that rest on a procedural and a substantive limit of the TCA. The parties take issue with whether the Defendant's decision has the effect of prohibiting the provision of personal wireless services. The parties are also in disagreement over whether the Defendant had substantial evidence to support the adverse decision.

**Count I - Prohibition of the Provision of Personal Wireless Services**

In order to show that an adverse zoning decision has the effect of prohibiting the provision of wireless services, the unsuccessful provider applicant must show that "its facility will fill an existing significant gap in the ability of remote users to access the national telephone network" and "that the manner in which it proposes to fill the significant gap in service is the least intrusive on the values that the denial sought to serve." APT Pittsburgh Ltd., 196 F.3d at 480.

There are two approaches to use when deciding if there is a significant gap in the ability of remote users to access the national telephone network. The "user-oriented" approach,

followed by the Third Circuit, requires the applicant to demonstrate that "the area the new facility will serve is not already served by another provider." <u>Omnipoint Communications Enterprises, L.P. v. Zoning Hearing Bd. of Easttown Twp.</u>, 331 F.3d 386, 398 (3d Cir. 2003). The "multi-provider" approach, which is endorsed by the FCC, requires applicants to merely show that they do not provide reliable service in a given area, regardless of other carriers' service in the same area. <u>See</u> <u>In Re: Petition for Declaratory Ruling to Clarify Provisions of</u> §332(c)(7)(B), 24 FCC Rcd 13994, Section C (F.C.C. 2009). Plaintiff and Defendant each discuss which approach should be followed, and if deference should be given to the FCC ruling. In this case, there is no need to go into that discussion, because we find that Plaintiff has not demonstrated that constructing the proposed tower is the least intrusive means to fill the alleged significant gap in service.

Plaintiff must show that "a good faith effort has been made to evaluate less intrusive alternatives, which includes considerations of alternative sites, alternative tower designs, placement of antenna on existing structures, and 'alternative system designs.'" <u>Sprint Spectrum, L.P.</u>, 606 F. App'x at 671 (citing <u>APT Pittsburgh Ltd.</u>, 196 F.3d at 480). Additionally, Section 402.A.(15)(b)(6) of the Ross Township Zoning Ordinance states:

> An applicant for a new commercial communications tower shall provide evidence to the Zoning Hearing Board that they have investigated co-locating their facilities on an existing tower, and other tall structures and have found such alternative to be unworkable. The reason shall be provided. In an absolute minimum, placement upon existing or approved towers within a mile radius shall be considered in addition to other reasonable opportunities . . .

§ 402.A.(15)(b)(6).

Plaintiff asserts that it demonstrated that there were no suitable locations for the site

available in commercial zoning districts, and that the proposed site is the least intrusive because the zoning ordinance allows such a site as a special exception. Plaintiff argues that its Radio Frequency Expert opined that placement of larger antennas, or antennas at greater height elevations, on other existing Sprint sites in the general vicinity of Ross Township, would not provide the radio frequency coverage required to fill the "significant gap." The expert did testify that an increase in height would increase the area of reliable coverage. Additionally, the Radio Frequency Expert did not do an analysis on increasing the length of an existing antenna.

        The Board found that Plaintiff did not meet the requirements of § 402.A.(15)(b)(6) or (b)(9). We agree. Plaintiff has not met its burden in demonstrating that the proposed tower is the least intrusive means. Section 402.A.(15)(b)(9) "requires an applicant seeking to construct a new cell tower in a Conservation Residential district or Rural Residential district to prove 'to the satisfaction of the Zoning Hearing Board that there are no suitable locations for the antenna on existing towers and/or within commercial and industrial districts.'" Nextel's real estate acquisition specialist drove in a one mile radius from the proposed site and found that there were no existing towers, tall structures or other suitable alternative locations within that area. As the Board noted in the Decision, Plaintiff did not consult the FCC to determine if other cellular carriers have erected antennas in the area, which is of public record. Plaintiff did not put into evidence whether any other towers owned by any other provider were located within Ross Township. Plaintiff also did not contact any other companies to determine if there was a tower near the subject area to possibly co-locate an antenna. The Board found that Plaintiff did not satisfy the provisions of (15)(b)(6) and (15)(b)(9), because Plaintiff did not conduct a sufficient investigation with respect to co-locating facilities on existing towers or as to the antenna height

or length on the existing towers, and that a tower located in a commercial zone as depicted on the Plaintiff's exhibit 13, sheet 10, would provide significant coverage in the area.

We find that Plaintiff did not show that "a good faith effort [was] made to evaluate less intrusive alternatives, which includes considerations of alternative sites, alternative tower designs, placement of antenna on existing structures, and 'alternative system designs.'" Sprint Spectrum, L.P., 606 F. App'x at 671. The Ross Township Zoning Ordinance clearly makes it a requirement that an applicant investigate whether other companies have towers to possibly co-locate. Therefore, we find that the Board's decision did not have the effect of prohibiting wireless service in Ross Township.

**Count II - "Substantial Evidence"**

We next determine whether the Board's decision, as guided by local law, is supported by substantial evidence. "Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). "The substantial evidence test applies to findings made by a zoning hearing board under the locality's own zoning requirements." Ogden Fire Co. No. 1 v. Upper Chichester Twp., 504 F.3d 370, 379 (3d Cir. 2007) (citing Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp., 181 F.3d 403, 408 (3d Cir. 1999). "Substantial evidence means 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sprint Spectrum, L.P., 606 F. App'x at 672 (quoting Cellular Tel. Co. v. Zoning Bd. of Adjustment of the Borough of Ho-Ho-Kus, 197 F.3d 64, 72 (3d Cir. 1999)). "In reviewing a record for substantial evidence, we do not 'weigh the evidence contained in [the] record or substitute [our] own conclusions for those of

11

the fact finder, but rather [we are] to determine whether there is substantial evidence in the record as a whole to support the challenged decision.'" Ogden Fire Co. No. 1, 504 F. 3d at 379 (internal citations omitted).

Plaintiff argues that Defendant's decision was not supported by substantial evidence. Section 402.A.(15)(b)(6) requires an applicant to investigate co-locating facilities on existing towers, as well as investigate other "reasonable opportunities." Section 402.A.(15)(b)(9) states that "[a] new tower shall only be granted by special exception approval in the CR or RR districts if the applicant proves to the satisfaction of the Zoning Hearing Board that there are no suitable locations for the antenna on existing towers and/or within commercial and industrial districts."[1] A special exception is a use "which is expressly permitted absent a showing of a detrimental effect on the community." Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd., et al., 590 A.2d 65, 70, 139 Pa Cmwlth. 206, 215 (Pa. Cmwlth. 1991) (internal citations omitted). "The applicant for the special exception has both the duty of presenting evidence and the burden of persuading the Zoning Hearing Board that the proposed use satisfies the objective requirements of the ordinance for grant of special exception." Id.

We find that the Board's decision to deny Plaintiff's application for a special exception was supported by substantial evidence. The Board found that the information shown on the propagation study was inconsistent with the results of the drive test report. The Board found that the propagation study showed no coverage in the alleged "significant gap" area, and the drive test study showed that over 75% of the calls were successful. As a result of the differences in studies,

---

[1] The parties have stipulated that Plaintiff does not have to show there is a more suitable location within an industrial district.

the Board found the propagation study unreliable. The Board also found that Plaintiff failed to satisfy the requirements of Section 402.A.(15)(b)(6), because Plaintiff failed to investigate other "reasonable opportunities," such as how the coverage would change if the height on the existing towers were elevated or co-locating with another carrier. Plaintiff did not contact any of its competitors or consult the FCC database, to determine whether other carriers were located in the area, for a possible co-location.

The Board also found that Plaintiff did not satisfy the requirement of Section 402.A.(15)(b)(9), because it found that Plaintiff did not demonstrate to the satisfaction of the Board, that another suitable location does not exist within the commercial district. Specifically, the Board found that a tower located in a commercial zone and depicted on Plaintiff's Exhibit 13, Sheet 10, does provide significant coverage in the area.

We find that the testimony and evidence introduced during the hearings supports a finding that Defendant's decision was based on substantial evidence. We may not discount Defendant's "choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." See Omnipoint Communications, Inc. v. City of Scranton and Zoning Hearing Bd. of City of Scranton, 36 F. Supp. 2d 222, 228 (M.D. Pa. 1999). Defendant made its decision based on the weight and substance of the evidence presented by Plaintiff. Defendant found that the propagation study and the drive test were contradictory and gave its reasons to afford less weight to the propagation study. Additionally, Defendant found that the proposed tower was not the least restrictive means, because Plaintiff failed to sufficiently investigate reasonable opportunities.

## CONCLUSION

For the foregoing reasons, we will grant Defendant's motion for summary judgment (Doc. 18) and deny Plaintiff's motion for summary judgment (Doc. 13).  Defendant's denial of Plaintiff's application did not have the effect of prohibiting services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II) and it was based on substantial evidence.  An appropriate order is attached.